***********
Upon review of the competent evidence of record with reference to the errors assigned and finding no good grounds to reconsider the evidence, receive further evidence or to rehear the parties or their representatives, the Full Commission affirms, with minor modifications, the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement designated as Stipulated Exhibit 1 and at the hearing on 5 December 2006 as:
 STIPULATIONS
1. The date of the injury, which is the subject of this claim is 25 September 2005.
2. On such date, the parties were subject to and bound by the provisions of the North *Page 2 
Carolina Workers' Compensation Act.
3. That on such date, defendant-employer employed three or more employees.
4. On all relevant dates, defendant-employer was insured by Liberty Mutual Insurance Company.
5. The defendant will provide a Form 22 wage chart to calculate the plaintiff's average weekly wage and compensation rate.
6. In addition, the parties also submitted the following exhibits:
 a. Stipulated Exhibit 2 — Copies of the plaintiff's medical records and Industrial Commission forms including a copy of the Compromise Settlement Agreement entered into by the parties in IC #190305.
 b. Defendants' Exhibit 1 — Job description for 400 hard pack machine operator.
 c. Defendants' Exhibit 2 — Material Feed Rates chart.
 d. The Industrial Commission took judicial notice of IC file #190305.
 *********** ISSUES FOR DETERMINATION
1. Whether plaintiff sustained a compensable occupational disease pursuant to N.C. Gen. Stat. § 97-53 on or about 25 September 2005 and if so to what benefits, if any, is plaintiff entitled.
2. Whether plaintiff is precluded from further benefits under the Act for her left and right wrists/hands in light of the Compromise Settlement Agreement approved by the Industrial Commission in file #190305. *Page 3 
 ***********
Based upon all of the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Griffin, plaintiff had been working for defendant-employer for twenty (20) years.
2. Plaintiff had been working on the 400 packer operator since 1999. In that capacity, plaintiff's duties required her to periodically check the quality of the packs and cartons of cigarettes and to replace labels, foil and other supplies when the machine ran low.
3. On 11 September 2001, plaintiff contends she sustained an accident on the job when some foil with which she was working slipped out of her hands causing her to fall onto her hands or, in the alternative, that she contracted a compensable occupational disease to her right and left hands, to wit, carpal tunnel syndrome. Dr. Gramig diagnosed plaintiff as having bilateral carpal tunnel syndrome and performed surgery on her right wrist.
4. At the time Dr. Gramig performed right carpal tunnel release surgery on 30 August 2002, he was of the opinion that plaintiff was suffering from severe carpal tunnel syndrome to her left hand and that her left hand was equally as severe as her right hand. Although plaintiff was advised that surgery on her left wrist was also necessary due to her diagnosis of "severe" carpal tunnel syndrome, plaintiff elected not to proceed with the surgery to her left hand at that time.
5. The parties entered into a Compromise Settlement Agreement, which was approved by the Industrial Commission in IC file #190305. Plaintiff testified that she executed the agreement and that she had the benefit of counsel at the time she entered into this agreement. This clincher specifically addressed both plaintiff's right and left hands and specifically included the fact that Dr. Gramig had recommended that plaintiff undergo bilateral carpal tunnel releases. *Page 4 
The agreement specifically stated: "(1) It is the position of Employee-Plaintiff that she will need future medical treatment, will lose time from work and may experience a change of condition in the future; (2) Plaintiff certifies to defendants and to the North Carolina Industrial Commission that she makes no further claim for total or partial wage loss as a result of her injury; (3) The sum of money recited in this Agreement to be paid upon order of the Industrial Commission is all that the said Employee-Plaintiff will ever receive; (4) She expressly agrees that any and all right which she may have as a result of any change of condition . . . are waived."
6. With respect to the claim that is the subject of this case, plaintiff contends that on 25 September 2005 she awakened with pain in her left hand and returned to see Dr. Gramig. Dr. Gramig had not seen plaintiff since he released her from his care in 2002.
7. Dr. Gramig performed left carpal tunnel release surgery in November 2005. This was the same surgery he told plaintiff she needed in 2002.
8. Plaintiff was released to return to work at her regular job without restrictions 3 April 2006. Dr. Gamig last treated plaintiff for her left carpal tunnel syndrome on 12 April 2006. Thereafter he treated plaintiff for a left thumb problem that is not the subject of this claim.
9. While plaintiff was out of work for this surgery, she received weekly A H (Accident and Health) benefits from defendant-employer. These benefits were completely funded by defendant-employer.
10. Plaintiff's testimony as to the repetitiveness of her job was refuted by co-employee, Mr. James Tillman. Mr. Tillman had been employed with Lorillard for 31 years and had been Plaintiff's direct supervisor since January 2005. Mr. Tillman testified that there were approximately sixteen (16) other employees doing the same job as plaintiff and none of them had ever expressed having any problems or complaints with their hands/wrists from doing this job. In *Page 5 
addition, Mr. Tillman indicated he had personally done plaintiff's job himself before he was a supervisor. Mr. Tillman's testimony is found to be credible.
11. Dr. Gramig did not testify that plaintiff's continued employment with defendant-employer significantly contributed to her development of bilateral carpal tunnel syndrome, nor did he indicate that plaintiff's employment put her at a greater risk of developing bilateral carpal tunnel syndrome than members of the general public. In his opinion, plaintiff's complaints of left wrist and hand problems could be related to the September 2001 incident, among many other things that have nothing to do with her job at defendant-employer.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain or develop an occupational disease, left carpal tunnel syndrome, related to her employment on 25 September 2005. N.C. Gen. Stat. § 97-53.
2. Because plaintiff did not sustain or develop an occupational disease related to her employment on 25 September 2005, she is not entitled to medical or indemnity compensation. N.C. Gen. Stat. §§ 97-25; 97-29; 97-30; 97-31.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law plaintiff's claim must be, and is hereby denied.
 2. Each side shall pay its costs. *Page 6 
3. Defendants' motion to dismiss plaintiff's appeal is denied.
This the __ day of December 2008.
S/__________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/__________________________ BUCK LATTIMORE COMMISSIONER
 S/__________________________ DIANNE C. SELLERS COMMISSIONER